# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| NEXUSCARD, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 2:15-cv-968-JRG-RSP |
| | § | |
| THE KROGER CO., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant The Kroger Co.'s ("Kroger") Motion to Dismiss asserting that all claims in U.S. Patent No. 5,924,080 (the "'080 patent") cover an abstract idea that is not patent-eligible under 35 U.S.C. § 101. Kroger asserts the claims are directed to the abstract idea of a "membership discount program." (Dkt. No. 8 at 1.) Kroger further asserts that the claims recite no more than this abstract idea "implemented with generic computing functions." (*Id.*) The Court, having considered the arguments, finds that Kroger's Motion to Dismiss (Dkt. No. 8) is **GRANTED**.

## BACKGROUND

Plaintiff NexusCard, Inc. ("Nexus") owns by assignment the '080 patent. (Dkt. No. 1 ¶ 7.) The patent claims methods that relate to a "real-time system for providing in-store purchase discounts for predetermined products, without the use of coupons." ('080 patent col. 1, ll. 7–9; *see also* '080 patent col. 2, ll. 52–54 ("The purpose of the process of the instant invention is to replace the paper coupon in both grocery and general merchant stores.").)

Claim 11 of the patent recites:

> 11. The method of processing and applying merchandise discounts to a consumer's purchases by providing a computerized membership system, said membership including a plurality of consumer members, a plurality of point of

purchase merchant members, a plurality of manufacturer members, and a centralized system provider, said membership system having:

a point of purchase merchant member computer terminal and computer and a centralized provider's computer, said provider's computer having a database for the storage and retrieval of information, said database storing information regarding point of purchase merchant members, manufacturer members, and consumer members, in predetermined files, at least some of said information being entered into the system at the time of a member establishing membership in said system and

communication means, said communications means providing real time communication between said member merchant's computer terminals and said provider's computer,

comprising the steps of:

a. providing consumer members with individual identification codes, said identification codes accessing said databases;

b. storing said consumer member identification codes on said provider's computer in a consumer database;

c. providing each consumer member with a membership ID, said membership ID having memory storage means, said memory storage means containing at least said consumer identification code;

d. storing merchandise information provided by a manufacturer member in a manufacturer member database in said provider's, said merchandise information including at least a merchandise identification code and the discount on predetermined merchandise,

e. displaying to consumers indicia, said indicia identifying point of purchase merchandise subject to a price discount,

f. transporting, by said consumer, consumer selected discounted and nondiscounted merchandise a purchase location at said merchant member to form a collection of transported merchandise, each of said transported merchandise having a merchandise identification code,

g. scanning merchandise identification codes of each of said transported merchandise, at said communication means,

h. scanning said consumer ID,

     i. uploading said scanned consumer identification code, from said merchant member, through said communication means to said provider's computer,

     j. comparing said consumer identification code with consumer identification codes stored in said provider's computer and verifying said consumer's membership,

     k. uploading said merchandise identification code for each of said scanned merchandise to said merchant member's computer,

     l. comparing at said merchant's computer, said merchandise identification code for consumer selected merchandise with the identification codes of said discounted merchandise,

     m. computing the discounts on said merchandise subject to a price discount,

     n. uploading to said provider's computer merchandise codes for merchandise subject to a price discount,

     o. downloading from said provider's computer to said merchant's computer through said merchant communication means, discounts on said merchandise subject to a price discount,

     p. printing at said merchant member's computer terminal a sales slip for said member consumer including the discounts for said merchandise subject to a price discount,

     q. sorting and storing in said provider's databases said downloaded data on said consumer and said merchandise purchased by said a member consumer from a member merchant, and

     r. storing merchant member sales data on said merchant member computer, wherein said provider maintains and processes, in real time, discounts provided by manufacturer members to member consumers without said member merchant being required to process said discounts or member consumers being required to present coupons or file rebates to obtain said discounts.

('080 patent col. 11, l. 41–col. 12, l. 63.)[1]

---

[1] The Court takes claim 11 as representative of all claims. Nexus does not imply that claim 11 is not representative and addresses it in its brief with independent claim 1. (*See* Dkt. No. 17 at 12.)

## RULE 12(b)(6) STANDARD

A party may move to dismiss a claim for a "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When a Court considers a Rule 12(b)(6) motion it must assume that all well-plead facts are true and must view them in a light most favorable to the non-moving party. *See Bowlby v. City of Aberdeen*, 681 F.3d 215, 218 (5th Cir. 2012). The Court must decide whether those facts state a claim for relief that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Bowlby*, 681 F.3d at 217 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## ELIGIBILITY UNDER 35 U.S.C. § 101

Section 101 of the Patent Act defines what is eligible for patent protection. It says: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101.

The Supreme Court has held that there are three specific exceptions to patent eligibility under § 101: laws of nature, natural phenomena, and abstract ideas. *Bilski v. Kappos*, 561 U.S. 593, 601 (2010). In *Mayo*, the Supreme Court set out a two-step test for "distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014) (citing *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1296–97 (2012)).

The first step of *Mayo* requires a court to determine if the claims are directed to a law of nature, natural phenomenon, or abstract idea. *Alice*, 134 S. Ct. at 2355. "If not, the claims pass muster under § 101." *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 714 (Fed. Cir. 2014). In making this determination, the court looks at what the claims cover. *Ultramercial*, 772 F.3d at 714 ("We first examine the claims because claims are the definition of what a patent is intended to cover."); *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1369 (Fed. Cir. 2015) ("At step one of the *Alice* framework, it is often useful to determine the breadth of the claims in order to determine whether the claims extend to cover a 'fundamental … practice long prevalent in our system ….'") (quoting *Alice*, 134 S. Ct. at 2356).

For example, in *Bilski*, the Supreme Court rejected as patent-ineligible "Claims 1 and 4 in petitioners' application" because the claims simply "explain[ed] the basic concept of hedging, or protecting against risk." *Bilski*, 561 U.S. at 611. Similarly, in *Ultramercial*, the Federal Circuit rejected as patent-ineligible a claim that included "eleven steps for displaying an advertisement in exchange for access to copyrighted media." *Ultramercial*, 772 F.3d at 714. In *Intellectual Ventures*, the Federal Circuit rejected as patent-ineligible a claim that recited components that "relate[d] to customizing information based on (1) information known about the user and (2) navigation data." *Intellectual Ventures*, 792 F.3d at 1369.

A court applies the second step of *Mayo* only if it finds in the first step that the claims are directed to a law of nature, natural phenomenon, or abstract idea. *Alice*, 134 S. Ct. at 2355. The second step requires the court to determine if the elements of the claim individually, or as an ordered combination, "transform the nature of the claim" into a patent-eligible application. *Alice*, 134 S. Ct. at 2355. In determining if the claim is transformed, "[t]he cases most directly on point are *Diehr* and *Flook*, two cases in which the [Supreme] Court reached opposite conclusions

about the patent eligibility of processes that embodied the equivalent of natural laws." *Mayo*, 132 S. Ct. at 1298; *see Alice*, 134 S. Ct. at 2355 ("We have described step two of this analysis as a search for an 'inventive concept.'").

In *Diehr*, the Court "found [that] the overall process [was] patent eligible because of the way the additional steps of the process integrated the equation into the process as a whole." *Mayo*, 132 S. Ct. at 1298 (citing *Diamond v. Diehr*, 450 U.S. 175, 187 (1981)); *see also Mayo*, 132 S. Ct. at 1299 ("It nowhere suggested that all these steps, or at least the combination of those steps, were in context obvious, already in use, or purely conventional."). In *Flook*, the Court found that a process was patent-ineligible because the additional steps of the process amounted to nothing more than "insignificant post-solution activity." *Diehr*, 450 U.S. at 191–92 (citing *Parker v. Flook*, 437 U.S. 584 (1978)).

A claim may become patent-eligible when the "claimed process include[s] not only a law of nature but also several unconventional steps … that confine[] the claims to a particular, useful application of the principle." *Mayo*, 132 S. Ct. at 1300; *see DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014) ("In particular, the '399 patent's claims address the problem of retaining website visitors that, if adhering to the routine, conventional functioning of Internet hyperlink protocol, would be instantly transported away from a host's website after 'clicking' on an advertisement and activating a hyperlink."). A claim, however, remains patent-ineligible if it describes only "'[p]ost-solution activity' that is purely 'conventional or obvious.'" *Mayo*, 132 S. Ct. at 1299.

## ANALYSIS

### *Mayo* Step 1

Kroger asserts the claims are directed to an abstract idea because they "can be distilled to nothing more than a method for providing a membership discount program." (Dkt. No. 8 at 9.) Kroger contends that the steps in claim 11 simply describe the abstract idea of using a generic computer to implement a "membership discount program" during the store check-out process. (*See* Dkt. No. 8 at 9–10.)

The Court finds claim 11 is directed to the abstract idea of a "membership discount program" on a network. Claim 11 recites an eighteen step method. The preamble says that the method must be performed on a network with "a plurality of point of purchase merchant members, a plurality of manufacturer members, and a centralized system provider," where some of the members have a database. ('080 patent col. 11, ll. 44–47; *see id.* col. 11, ll. 48–61 (reciting databases).) The five steps after the preamble recite acts ubiquitous to creating a "membership discount program." Those include: assigning consumers an identification code, recording the merchandise that the store intends to discount, and notifying consumers that an item has been discounted. The steps then recite storing this information on generic databases and storage mediums. ('080 patent col. 11, l. 61–col. 12 l. 12.)

The next four steps recite acts that are common to the check-out process. For example, the sixth step requires a customer to carry the merchandise to the counter. ('080 patent col. 12, ll. 16–21.) ("transporting, by said consumer, consumer selected discounted and non-discounted merchandise [to] a purchase location at said merchant member to form a collection of transported merchandise")); *see also Limelight Networks, Inc. v. Akamai Techs., Inc.*, 134 S. Ct. 2111, 2118 (2014) ("[I]n this case, performance of all the claimed steps cannot be attributed to a single

person, so direct infringement never occurred. [Appellant] cannot be liable for inducing infringement that never came to pass."). The seventh step describes "scanning" the merchandise in. (*See* '080 patent col. 12, ll. 22–24.)

The remaining nine steps recite generic functions that occur after a computer has received a data input. These include "uploading," "comparing," "computing," "downloading," and "sorting" the data on various computers on the network. ('080 patent col. 12, ll. 25–63.) Together, the steps of claim 11 do no more than "describe a problem, announce purely functional steps that purport to solve the problem, and recite standard computer operations to perform some of those steps." *Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, 66 F. Supp. 3d 829, 845 (E.D. Tex. 2014) (Bryson, J.).

Nexus argues that claim 11 is not directed at an abstract idea. First, Nexus asserts Kroger has overstated the breadth of the claim because, at the time of invention, "membership discount programs were not widely implemented." (Dkt. No. 17 at 9.) Nexus notes by way of background that claim 11 would not have covered the "membership discount programs" that existed before the patent. (*See* Dkt. No. 17 at 9–10.) Second, Nexus claims the '080 patent teaches a new method for implementing a "membership discount program." Nexus argues that, at the time of invention, "a consumer's purchase information was not collected on specific purchases." (Dkt. No. 17 at 10.)

The Court finds that neither of these arguments shows claim 11 is directed at something concrete. The Supreme Court has indicated that the prevalence of an abstract idea does not factor into a patent-eligibility analysis. In *Mayo*, for example, the Supreme Court held that even a newly discovered law of nature is not patent-eligible. *See Mayo*, 132 S. Ct. at 1301. Furthermore, the Court finds that describing two abstract ideas in connection with each other—"collecting

customer information" and "membership discount programs"—does not cause either abstract idea to then become a concrete thing.

## *Mayo* Step 2

Kroger argues, element-by-element, that the ordered combination of the claim does not add an inventive step to the "membership discount program." (*See* Dkt. No. 8 at 15–21.) Kroger points out the elements of the claim recite either (1) an abstract idea (*see* Dkt. No. 8 at 15 ("Step (a) merely recites the abstract idea of providing a consumer member with a unique identification code to access a database.")) or (2) an abstract idea executed using a routine computer function (*see* Dkt. No. 8 at 16 ("Step (b) does not recite anything more than an abstract idea that may be implemented by generic computer equipment.").)

Nexus, in response, contends that "[t]he '080 patent claims require something more than [] 'applying' a membership discount program" because the claims "contain multiple restrictions on how the 'membership discount program' is accomplished." (Dkt. No. 17 at 11.) Nexus asserts that the restrictions include tangible limitations such as: computed discounts, a consumer ID with memory storage means, indicia that notifies the consumer of membership discounted items, a printed receipt showing membership discounted items and discounts received, a cash register with communication means and the capability to scan merchandise and a consumer ID. (Dkt. No. 17 at 12.)

The Court finds for two reasons, that these limitations do not add an "inventive step" to the idea of a "membership discount program." First, many of these limitations recite functional results. For example, the "indicia that notifies the consumer" limitation, describes any method or thing that achieves the result of notifying a customer. Second, the remaining limitations recite either a "membership discount program" limited to a technological environment or insignificant

post-solution activity. For example, the "cash register with communication means" limitation recites a "membership discount program" carried out in the environment of a cash register connected to the internet. *See Alice*, 134 S. Ct. at 2358. The "printed receipt" limitation recites "insignificant post-solution activity." *Bilsik*, 130 S. Ct. at 3230 (quoting *Diehr*, 450 U.S. at 191–92).

Finally, the Court finds that Nexus' remaining arguments do not show the claims are patent-eligible. Nexus contends the claims disclose an inventive step because the "membership discount program" of the claims differs from the "membership discount programs" that existed at invention. (*See* Dkt. No. 17 at 13 ("Membership discount programs that were fundamental or conventional . . . prior to the '080 patent are programs where a shopper would receive tokens, a stamp card, a punch card, frequent flying, or receiving monopoly pieces for buying a BigMac.").) Nexus notes, for example, that in pre-existing programs membership information was not always collected from the members. (Dkt. No. 17 at 15,)

The Court recognizes that some business methods like "membership discount programs" can be patent-eligible because the words of § 101 "preclude[] the broad contention that the term 'process' categorically excludes business methods." *Bilski*, 561 U.S. at 606. However, the Court finds that the "membership discount program" in claim 11 is not patent-eligible because: (1) it claims the abstract idea of a "membership discount program" where members have to register and (2) then it limits the implementation of that abstract idea to a network of connected computers.

## CONCLUSION

For the reasons stated above, the Court finds that the '080 patent is not directed at patent-eligible subject matter. The complaint has failed to "state a claim to relief that is plausible on its

post-solution activity. For example, the "cash register with communication means" limitation recites a "membership discount program" carried out in the environment of a cash register connected to the internet. *See Alice*, 134 S. Ct. at 2358. The "printed receipt" limitation recites "insignificant post-solution activity." *Bilsik*, 130 S. Ct. at 3230 (quoting *Diehr*, 450 U.S. at 191–92).

Finally, the Court finds that Nexus' remaining arguments do not show the claims are patent-eligible. Nexus contends the claims disclose an inventive step because the "membership discount program" of the claims differs from the "membership discount programs" that existed at invention. (*See* Dkt. No. 17 at 13 ("Membership discount programs that were fundamental or conventional . . . prior to the '080 patent are programs where a shopper would receive tokens, a stamp card, a punch card, frequent flying, or receiving monopoly pieces for buying a BigMac.").) Nexus notes, for example, that in pre-existing programs membership information was not always collected from the members. (Dkt. No. 17 at 15,)

The Court recognizes that some business methods like "membership discount programs" can be patent-eligible because the words of § 101 "preclude[] the broad contention that the term 'process' categorically excludes business methods." *Bilski*, 561 U.S. at 606. However, the Court finds that the "membership discount program" in claim 11 is not patent-eligible because: (1) it claims the abstract idea of a "membership discount program" where members have to register and (2) then it limits the implementation of that abstract idea to a network of connected computers.

## CONCLUSION

For the reasons stated above, the Court finds that the '080 patent is not directed at patent-eligible subject matter. The complaint has failed to "state a claim to relief that is plausible on its

face." *Twombly*, 550 U.S. at 570. Accordingly, Kroger's Motion to Dismiss (Dkt. No. 8) is hereby **GRANTED**.

**So ORDERED and SIGNED this 24th day of March, 2016.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE